Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| ROYAL TRANSPORT EXPRESS, LLC | § | |
| | § | Case no. 20-41227 |
| | § | |
| | § | |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF ROYAL TRANSPORT EXPRESS, LLC.
PURSUANT TO SECTION 1190
OF THE BANKRUPTCY CODE DATED MAY 26, 2020**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Royal Transport Express, LLC, ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on May 26, 2020. The Debtor operates trucking company. The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the unsecured creditors of Debtor.

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED MAY 26, 2020 - Page 1**

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V").   Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

### Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important.  In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  As set forth above,  a Subchapter V Chapter 11  does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**.  Claimants in Class 1 and 11 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

**Impaired Classes**.  The Class 2 through 10 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 10.  Each holder of an Allowed Claim in Classes 2 through 10  may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 1100, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

### ARTICLE II
### DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is

no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. **"Case"** shall mean this Chapter 11 case.

7. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. **"Claimant"** shall mean the holder of a Claim.

9. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED MAY 26, 2020 – Page 4**

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean Royal Express Transport, LLC.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee.

18.     **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19.     **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.     **"Final Confirmation"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, May 26, 2020.

24.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27. **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

30. **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## III
## REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.  IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

ARTICLE IV

FINANCIAL PICTURE OF THE DEBTORS

Financial History and Background of the Debtor

The Debtor operates a trucking company. As a result of a slowing trucking economy and overextending in purchasing equipment, the Debtor filed a Chapter 11 bankruptcy on December 2, 2019 ("First Bankruptcy"). During the course of the First Bankruptcy, the Debtor entered into a number of agreements with creditors to maintain operations. In March 2020 the COVID-19 pandemic, essentially shut down the Debtor's business. In March 2020, the Debtor's income was $120,002 but in April 2020 the income dropped to $48,782. In May 2020, the Debtor's income had

dropped to $29,667. Because of this income drop of over 75%, the Debtor was unable to make the payments as agreed to the creditors in the First Bankruptcy. In May 2020, the Court dismissed the Debtor's First Bankruptcy.

At the end of May 2020, the Debtor began receiving higher volumes of business. The Debtor has streamlined operations and currently has 5 trucks running and 5 trailers. The Debtor also rents out one trailer for $700 per month. At the present time the Debtor has booked work for the month of June 2020 which will provide the Debtor with at least $90,700 in income. Based upon current business and the re-opening of the trucking business as the risk from COVID-19 has lessen, the Debtor has filed this proceeding to allow it to continue to operate and provide a quick repayment to all its creditors.

### Future Income and Expenses Under the Plan

The Debtor believes it now has a solid business core and can continue operations while repaying its current debts to the creditors. Attached hereto as Exhibit "**A**" are projections of gross income, expenses and operating income for the next year. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 50% by Harpreet Singh and 50% by Bahadur Dhesi. Mr Singh is a driver and is compensated at the same rate as the other drivers of the Debtor. Mr Dhesi runs the office and maintains all accounting functions. Mr Dhesi receives a monthly salary of $5,000.

### ARTICLE V.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a trucking company. The Debtor's assets consist 5 trucks and 6 trailers. The value of the Debtor's assets, if liquidated, would not cover the current secured creditors. The Debtor believes there is very little likelihood of any dividend to the unsecured creditors in the event of a liquidation of the assets of the Debtor.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B".**

### ARTICLE VI
### SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 11 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Ad Valorem Tax Creditors)** are impaired and shall be satisfied as follows: The Debtor owed ad valorem business personal property taxes to Collin County, the City of Wylie and Wylie ISD. Based upon the Proofs of Claim filed by those entities in the First Bankruptcy, the Debtor believes the amount owing to Collin County is $1,044.67; the amount owed to City of Wylie is $5,364.76; and the amount owed to Wylie ISD is $13,174.46. All Ad Valorem taxes due and owing they will receive post-petition pre-confirmation interest at the state statutory rate of 12% per annum and post-confirmation interest at the rate of 12% per annum. The Debtor will pay any Allowed Class 2 claimant over a period of 48 months from the Effective Date, commencing on the Effective Date. The Debtor may pre-pay these taxes at any time without penalty. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan. Based upon the Proofs of Claim the Debtor would show the monthly payment on all Class 2 claims will be approximately $515.

The Class 2 Creditors are impaired under this Plan.

**Class 3 Claimants (Allowed Secured Claims of BMO Harris**) are impaired and shall be satisfied as follows: On or about June 23, 2017 the Debtor executed that certain Loan and Security Agreement ("Agreement #1") with BMO Harris Bank N.A. ("BMO") for the purchase of that certain 2018 Utility Trailer VIN ending 7206 with that certain Thermo King Unit s/n ending 1699 ("Agreement #1 Collateral") for the original purchase price of $88,442.40. In the First Bankruptcy BMO asserted a Proof of Claim under Agreement #1 in the amount of $50,474.59. The Debtor would show the current value of the Agreement # 1 Collateral is $40,000. The Debtor shall pay BMO a secured claim in the amount of $40,000 under Agreement #1. This amount shall be paid in 36 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

On or about June 22, 2018, the Debtor executed that certain Loan and Security Agreement ("Agreement #2") with BMO for the purchase of that certain 2014 Utility Trailer VIN ending 9737 with that certain Thermo King Unit s/n ending 4583 ("Agreement #2 Collateral") for the original purchase price of $37,723.20. In the First Bankruptcy BMO asserted a Proof of Claim under Agreement #2 in the amount of $26,654. The Debtor would show the current value of the Agreement # 2 Collateral is $23,000. The Debtor shall pay BMO a secured claim in the amount of $23,000 under Agreement #2. This amount shall be paid in 36 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

On or about July 6, 2018, the Debtor executed that certain Loan and Security Agreement ("Agreement #3") with BMO for the purchase of that certain 2019 Freightliner Truck VIN ending 4785 ("Agreement #3 Collateral") for the original purchase price of $201,631.80. In the First Bankruptcy BMO asserted a Proof of Claim under Agreement #3 in the amount of $151,216.42. The Debtor would show the current value of the Agreement # 3 Collateral is $84,900. The Debtor shall pay BMO a secured claim in the amount of $84,900 under Agreement #3. This amount shall be paid in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

BMO shall retain its liens on the BMO Agreement #1, BMO Agreement #2 and BMO Agreement #3 Collateral until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, BMO shall be entitled to immediate possession of the collateral associated with the Agreement in default without further Order of this Court.

The Class 3 Creditor is impaired under this Plan.

**Class 4 Claimants (Allowed Secured Claims of Transportation Alliance Bank, Inc dba TAB Bank**) are impaired and shall be satisfied as follows: On or about October 3, 2017 the Debtor executed that certain Business Loan Agreement ("Agreement #1") with Transportation Alliance Bank, Inc b/d/a TAB Bank ("TAB") for the purchase of that certain 2018 Freightliner Truck VIN ending 4766 ("Agreement #1 Collateral") for the original purchase price of $132,242.36. In the First Bankruptcy TAB asserted a Proof of Claim under Agreement #1 in the amount of $100,598.91. The Debtor would show the current value of the Agreement # 1 Collateral is $55,000. The Debtor shall pay TAB a secured claim in the amount of $55,000 under Agreement #1. This amount shall be paid

in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

On or about February 28, 2018, the Debtor executed that certain Business Loan Agreement ("Agreement #2") with TAB for the purchase of that certain 2018 Freightliner Truck VIN ending 9325 ("Agreement #1 Collateral") for the original purchase price of $142,054.85. In the First Bankruptcy TAB asserted a Proof of Claim under Agreement #2 in the amount of $121,319.08. The Debtor would show the current value of the Agreement # 2 Collateral is $82,900. The Debtor shall pay TAB a secured claim in the amount of $82,900 under Agreement #2. This amount shall be paid in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

TAB shall retain its liens on the TAB Agreement #1 and TAB Agreement #2 Collateral until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, TAB shall be entitled to immediate possession of the collateral associated with the Agreement in default without further Order of this Court.

The Class 4 Creditor is impaired under this Plan.

**Class 5 Claimants (Allowed Secured Claims of Simmons Bank**) are impaired and shall be satisfied as follows: On or about February 28, 2018 the Debtor executed that certain Equipment Finance Agreement ("Agreement") with Simmons Bank ("Simmons") for the purchase of that certain 2018 Utility Trailer VIN ending 14256 ("Agreement Collateral") for the original purchase price of $74,020.20. In the First Bankruptcy Simmons asserted a Proof of Claim under the Agreement in the amount of $51,225.90. The Debtor would show the current value of the Agreement Collateral is $40,000. The Debtor shall pay Simmons a secured claim in the amount of $40,000 under the Agreement. This amount shall be paid in 36 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

Simmons shall retain its liens on the Agreement Collateral until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, Simmons shall be entitled to immediate possession of the Agreement Collateral without further Order of this Court.

The Class 5 Creditor is impaired under this Plan.

**Class 6 Claimants (Allowed Secured Claims of ACAR Leasing LTD dba GM Financial Leasing**) are impaired and shall be satisfied as follows: On or about March 12, 2018 the Debtor executed that certain Closed End Motor Vehicle Lease ("Agreement") with Gateway Buick, GMC[1] ("ACAR") for the purchase of that certain 2018 GMC Sierra VIN ending 3117 ("Agreement Collateral") for the original purchase price of $60,758.01. In the First Bankruptcy ACAR asserted a Proof of Claim under the Agreement in the amount of $13,600. The Debtor would show the current

---

[1] Upon information and belief the Agreement was assigned to ACAR Leasing LTD dba GM Financial Leasing.

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED MAY 26, 2020 - Page 11**

value of the Agreement Collateral is $25,000. The Debtor shall pay ACAR a secured claim in the amount of $13,600 under the Agreement. This amount shall be paid in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

ACAR shall retain its liens on the Agreement Collateral until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, ACAR shall be entitled to immediate possession of the Agreement Collateral without further Order of this Court.

The Class 6 Creditor is impaired under this Plan.

**Class 7 Claimants (Allowed Secured Claims of Bank of the Ozarks**) are impaired and shall be satisfied as follows: On or about December 4, 2017 the Debtor executed that certain Equipment Finance Agreement ("Agreement #1") with Bank of the Ozarks ("Ozarks") for the purchase of that certain 2018 Utility Trailer VIN ending 1421 with a Thermo King Unit s/n ending 3468 ("Agreement #1 Collateral") for the original purchase price of $71,874.60. In the First Bankruptcy Ozarks asserted a Proof of Claim under Agreement#1 in the amount of $41,647.71. The Debtor would show the current value of Agreement #1 Collateral is $40,000. The Debtor shall pay Ozarks a secured claim in the amount of $40,000 under Agreement #1. This amount shall be paid in 36 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

On or about October 3, 2016 the Debtor executed that certain Equipment Finance Agreement ("Agreement #2") with Ozarks for the purchase of that certain 2014 Utility Trailer VIN ending 5605 with a Thermo King Unit s/n ending 5605 ("Agreement #2 Collateral") for the original purchase price of $41,933.76. In the First Bankruptcy Ozarks asserted a Proof of Claim under Agreement#2 in the amount of $7,682.43. The Debtor would show the current value of Agreement #2 Collateral is $20,000. The Debtor shall pay Ozarks a secured claim in the amount of $7,682.43 under Agreement #2. This amount shall be paid in 36 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

Ozarks shall retain its liens on the Ozarks Agreement #1 and Ozarks Agreement #2 Collateral until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, Ozarks shall be entitled to immediate possession of the collateral associated with the Agreement in default without further Order of this Court.

The Class 7 Creditor is impaired under this Plan.

**Class 8 Claimants (Allowed Secured Claims of BlueBridge Financial, LLC**) are impaired and shall be satisfied as follows: On or about December 14, 2016 the Debtor executed that certain Equipment Finance Agreement ("Agreement") with BlueBridge Financial, LLC ("BlueBridge") for the purchase of that certain 2017 Utility Trailer VIN ending 2417 ("Agreement Collateral") for the original purchase price of $86,110.20. In the First Bankruptcy BlueBridge asserted a Proof of Claim under the Agreement in the amount of $37,314.42. The Debtor would show the current value of the

Agreement Collateral is $40,000. The Debtor shall pay BlueBridge a secured claim in the amount of $37,414.42 under the Agreement. This amount shall be paid in 36 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

BlueBridge shall retain its liens on the Agreement Collateral until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, BlueBridge shall be entitled to immediate possession of the Agreement Collateral without further Order of this Court.

The Class 8 Creditor is impaired under this Plan.

**Class 9 (Allowed Secured Claims of ENGS Commercial Finance)** are impaired and shall be satisfied as follows: On or about December 5, 2017 the Debtor executed that certain Commercial Finance Agreement ("Agreement") with ENGS Commercial Finance Co. ("ENGS") for the purchase of that certain 2018 Freightliner Truck VIN ending 3319 ("Agreement Collateral") for the original purchase price of $141,579.50. As of the petition Date the amount owed ENGS under the Agreement was $117,192. The Debtor would show the current value of the Agreement Collateral is $64,900. The Debtor shall pay ENGS a secured claim in the amount of $64,900 under the Agreement. This amount shall be paid in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date.

ENGS shall retain its liens on the Agreement Collateral until paid in full under the terms of this Plan. In the event of a Default under the terms of this Plan, ENGS shall be entitled to immediate possession of the Agreement Collateral without further Order of this Court.

The Class 9 Creditor is impaired under this Plan.

**Class 10 (Allowed Unsecured Creditors)** are impaired and shall be satisfied as follows: All allowed unsecured creditors, which shall include any deficiency claims for creditors in Classes 3 through 9, shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing on the Effective Date of $2,000 into the unsecured creditors' pool. The Debtor shall make distributions to the Class 10 creditors every 90 days commencing 90 days after the Effective Date. The Debtor shall make a total of 60 payments into the unsecured creditors pool with the first payment being made on the Effective Date.

The Class 10 creditors are impaired.

**Class 11 (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owner will receive no payments under the Plan, however, they will be allowed to retain their ownership in the Debtor.

Class 11 Claimants are not impaired under the Plan.

## ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the historical operations of the business prior to the COVID-19 shutdown and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $20,000 in tax claims and approximately $15,000 in administrative claims. Claims to the administrative creditors and the tax creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the secured creditors is approximately $553,000. The values of the collateral securing the secured claims is approximately $511,000. The Debtor believes the value of the assets would not exceed the administrative creditors, secured creditors and tax creditor debts, and therefore, a liquidation would result in no distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor.

Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent to Bahadur Dhesi 408-591-6810. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS**.

## ARTICLE XVII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate.

Dated: May 26, 2020.

Respectfully submitted,

Royal Express Transport, LLC.

  /s/ Bahadur Dhesi
By: Bahadur Dhesi
Its: Managing Member

EXHIBIT 'B'

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS | | |
| Trucks | | |
|     Freightliner 4766 | 55,000 | 55,000[2] |
|     Freightliner 9325 | 82,900 | 82,900 |
|     Freightliner 3319 | 64,900 | 64,900 |
|     Freightliner 4785 | 84,900 | 84,900 |
|     Peterbilt 9387 | 20,000 | 20,000 |
|     GMC 3117 | 13,600 | 13,600 |
| Trailers | | |
|     2014 - 9737 | 23,000 | 23,000 |
|     2018 - 1421 | 40,000 | 40,000 |
|     2018 - 1425 | 40,000 | 40,000 |
|     2017 - 2417 | 40,000 | 40,000 |
|     2018 - 7206 | 40,000 | 40,000 |
|     2014 - 5605 | 20,000 | 20,000 |
| | | |
| LIABILITIES | | |
| ADMINISTRATIVE | 15,000 | 15,000 |
| TAX CREDITORS | 14,000 | 14,000 |
| SECURED CREDITORS | 553,000 | 511,000 |
| UNSECURED CREDITORS | 100,000 | 150,000 |
| | | |
| DISTRIBUTION TO UNSECURED | 0% | 60% |

---

[2] The chapter 11 and Chapter 7 values were taken from listing at Truckpaper.com. Truckpaper.com is an on-line listing service for used trucks and trailers.